UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY NAGLER, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>   v.<br><br>COINSTAR INC., PAUL D. DAVIS, GREGG A. KAPLAN and J. SCOTT DI VALERIO<br><br>                 Defendants. | No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

## I.  INTRODUCTION

Plaintiff Jeffrey Nagler ("Plaintiff" or "Nagler") asserts the following claims and causes of action on behalf of himself and all purchasers of the common stock of Coinstar Inc. ("Coinstar" or the "Company") and certain of its senior officers between October 28, 2010, and January 13, 2011, inclusive (the "Class Period").  Plaintiff brings these claims under the Securities Exchange Act of 1934 (the "Exchange Act"), alleging that defendants disseminated material statements with knowledge or reckless disregard of their falsity at the time of such publication and omitted to reveal material information necessary to make defendants' statements, in light of such material omissions, materially accurate.

## II.  NATURE OF THE CASE

1.     Coinstar is headquartered in Bellevue, Washington.  The Company establishes and operates automated retailing machines at existing retailers such as supermarkets and drug

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-1

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

stores.  It offers both self-service coin-counting kiosks, enabling users to convert change to cash. It also provides automated DVD rental kiosks or "Redbox DVD kiosks," enabling customers to rent or purchase digital video disks ("DVD"), a business of which it became sole owner in 2009. By the commencement of the Class Period, Coinstar generated approximately 80% of its revenues through its DVD kiosks.

2.      Throughout the Class Period, Coinstar touted its ability to manage its Redbox DVD kiosk business, the engine for its growth.  It remained overwhelmingly positive about its ability effectively to manage and control its inventory, select titles and the proper formats of the DVDs it sold, and track consumer sales.  Notwithstanding that studios required DVD vendors to wait 28 days after they began distributing their titles to consumers via their own retail channels before carrying the titles, Coinstar remained bullish on its DVD operations, representing that it was operating according to plan.  The 28-day delay, defendants claimed, had no material impact on Coinstar's successfully managing its inventory or on its financial results.

3.      Based on those positive developments, defendants disseminated an "Investor Update," appended to a Current Report on Form 8-K, filed with the SEC on October 28, 2010. In the Investor Update, defendants promoted favorable forward financial guidance for the fourth quarter of 2010 of revenues of $415-$440 million and earnings per share ("EPS") from continuing operations of $0.79-$0.85 per share.  Defendants issued similarly favorable guidance for the full year 2011 of EPS from continuing operations of $3.00 to $3.50 on projected consolidated revenues of $1.80 - $1.95 billion.

4.      Throughout the Class Period, however, defendants hid from analysts and investors a host of undisclosed, adverse factors that were negatively impacting Coinstar's business and which would cause it to report declining financial results, materially less than the market expectations defendants had caused and cultivated.

5.      In particular, while disseminating unabashedly optimistic financial forecasts, Coinstar suffered from material, adverse operating conditions that belied its rosy outlook.  In

particular, a decline in sales resulting from customers' purchasing fewer DVDs per purchase disrupted the Company's operating plan.  Further, poor inventory management and controls resulted in the Company removing material amounts of old inventory early in the fourth quarter of 2010, immediately and adversely impacting revenues and gross margins for that quarter.

6.     More, lower sales of more expensive "Blu-ray" DVDs and poor title selection materially weakened sales.  At all times during the Class Period, the Company was being adversely impacted by the 28-day delay that the movie studios had imposed on Coinstar – even before the fourth quarter of 2010 – hampering the Company's ability to meet the financial guidance defendants disseminated to the investing public.  In fact, Coinstar lacked adequate systems of internal operational or financial controls, rendering its public statements and reported guidance inaccurate and unreliable.

7.     Throughout the Class Period, other longer-term issues were adversely affecting Coinstar, as competition from on-line video streaming providers, such as Netflix – which delivers movies directly to consumers over the internet to their home televisions and computers – eroded Coinstar's business despite its statements to the contrary.

8.     As a result of these undisclosed, adverse conditions, throughout the Class Period, defendants lacked any reasonable basis to claim that Coinstar was operating according to plan or that Coinstar could achieve their revenue and earnings guidance.

9.     This decline caused investors who purchased their shares during the Class Period material losses and substantial damages, as a result of defendants' publication of material false and misleading information about Coinstar, and the dramatic decline in the price of Company shares following the publication of defendants' corrective disclosures:

10.     Defendants were motivated to and did conceal the true operational and financial condition of Coinstar, and materially misrepresented and failed to disclose the conditions that were adversely affecting Coinstar throughout the Class Period, because it enabled Coinstar

1    insiders to sell millions of dollars of their privately held Coinstar shares while in possession of

2    material adverse non-public information about the Company.

3            11.     On January 13, 2011, after the close of trading, defendants issued a press release,

4    announcing preliminary results for the fourth quarter of 2010 and updated guidance for 2011.

5    Instead of revenues over $415 million, revenues were $391 million.   EPS, too, suffered by

6    comparison, instead of $0.79-$0.85 per share, defendants disclosed likely EPS of $0.65-$0.69

7    per share.   Defendants excused their failure, pointing to operational failures such as removing

8    older titles in anticipation of newer releases that "did not materialize" and the effect of the 28-

9    day delay on demand.   On this news, on January 14, 2011, trading in Coinstar common stock

10   opened at $43.03 per share, down 24% from the January 13, 2011 close of $56.95.   On January

11   14, 2011, Coinstar closed at $41.50, a 27% decline over the previous day's close, on relatively

12   huge volume of 19,358,900 shares traded.

13           12.     As a direct result of defendants materially false and misleading statements,

14   plaintiff and members of the class suffered damages in an amount to be determined at trial.

15                              III.   JURISDICTION AND VENUE

16           13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

17   the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by

18   the United States Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

19           14.     This Court has jurisdiction over the subject matter of this action pursuant to 28

20   U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

21           15.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and

22   28 U.S.C. § 1391(b). Coinstar maintains its principal place of business in this District and many

23   of the acts and practices complained of herein occurred in substantial part in this District.

24           16.     In connection with the acts alleged in this complaint, defendants, directly or

25   indirectly, used the means and instrumentalities of interstate commerce, including, but not

26

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-4

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

1   limited to, the mails, interstate telephone communications, and the facilities of the national

2   securities markets.

3                                          **IV.  PARTIES**

4   **A.      Plaintiff**

5          17.     As set forth in the accompanying certification, incorporated herein by reference,

6   plaintiff Jeffrey Nagler, purchased the common stock of Coinstar at artificially inflated prices

7   during the Class Period and has been damaged thereby.

8   **B.      Corporate Defendant**

9          18.     Defendant Coinstar, Inc. ("Coinstar") is a Delaware corporation with its principal

10  place of business at 1800 114th Avenue SE, Bellevue, WA 98004.  According to the Company's

11  profile, Coinstar provides automated retail solutions primarily in the United States, Canada,

12  Puerto Rico, the United Kingdom, Mexico, and Ireland.  The Company owns and operates self-

13  service coin-counting machines, which enable consumers to convert their coins to bills, a gift

14  card, or an e-certificate; and installs and operates DVD kiosks, which enable costumers to rent or

15  purchase movies.   Coinstar offers its services at approximately 95,000 points of presence,

16  including supermarkets, drug stores, mass merchants, financial institutions, convenience stores,

17  restaurants, and money transfer agent locations.   As of December 31, 2009, it owned and

18  operated approximately 19,200 coin-counting machines and 22,400 DVD kiosks.  At the time the

19  Class Period commenced, approximately 80% of the Company's revenues were generated

20  through the sale of DVDs through the Company's kiosks.

21  **C.      Individual Defendants**

22         19.     Defendant Paul D. Davis ("Davis") is, and during the Class Period was, Chief

23  Executive Officer of the Company.  During the Class Period, defendant Davis made materially

24  false and misleading statements about the Company and Certified the Company's SEC filings,

25  including Coinstar's Form 10-Q.

26

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-5-

1      20.    Defendant Gregg A. Kaplan ("Kaplan") is, and during the Class Period was, President and Chief Operating Officer of the Company.  During the Class Period, defendant Kaplan assisted in the preparation and filing of the Company's SEC filings, including Coinstar's Form 10-Q.

21.    Defendant J. Scott Di Valerio ("Di Valerio") is, and during the Class Period was, Chief Financial Officer of the Company.  During the Class Period, defendant Di Valerio made materially false and misleading statements about the Company and signed and certified the Company's SEC filings, including Coinstar's Form 10-Q.

22.    The defendants referenced above in ¶¶ 19-21 are referred to herein as the "Individual Defendants."

23.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Coinstar's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false and misleading statements pleaded herein.

24.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Coinstar common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Coinstar's business, operations, and management, and the intrinsic value of Coinstar common stock; (ii) enabled defendants to

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-6

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

1   artificially inflate the price of Coinstar common stock; (iii) enabled Coinstar insiders to sell

2   millions of dollars of their privately held Coinstar shares while in possession of material adverse

3   non-public information about the Company; and (iv) caused plaintiff and other members of the

4   Class to purchase Coinstar common stock at artificially inflated prices.

5                           **V.  PLAINTIFF'S CLASS ACTION ALLEGATIONS**

6          25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

7   Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

8   otherwise acquired the common stock of Coinstar between October 28, 2010, and January 13,

9   2011, inclusive (the "Class") and who were damaged thereby.  Excluded from the Class are

10  defendants, the officers and directors of the Company, at all relevant times, members of their

11  immediate families and their legal representatives, heirs, successors, or assigns and any entity in

12  which defendants have or had a controlling interest.

13         26.     The members of the Class are so numerous that joinder of all members is

14  impracticable.  Throughout the Class Period, Coinstar common stock was actively traded on the

15  NASDAQ. As evidence of this, as of October 22, 2010, the Company had over 31.672 million

16  shares of common stock issued and outstanding.  While the exact number of Class members is

17  unknown to plaintiff at this time and can only be ascertained through appropriate discovery,

18  plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record

19  owners and other members of the Class may be identified from records maintained by Coinstar

20  or its transfer agent and may be notified of the pendency of this action by mail, using the form of

21  notice similar to that customarily used in securities class actions.

22         27.     Plaintiff's claims are typical of the claims of the members of the Class as all

23  members of the Class are similarly affected by defendants' wrongful conduct in violation of

24  federal law that is complained of herein.

25         28.     Plaintiff will fairly and adequately protect the interests of the members of the

26  Class and has retained counsel competent and experienced in class and securities litigation.

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-7-

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Coinstar; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.  SUBSTANTIVE ALLEGATIONS

A.     **Defendants' Materially False and Misleading Statements
Made During the Class Period**

31.     The Class Period commences on October 28, 2010 with the announcement of Coinstar's results for the third quarter of 2010, ended September 30, 2010.  Defendants disseminated a press release, summarizing the Company's financial results.  According to defendants, revenue and EPS grew 42% and 74% respectively.  Third quarter revenue increased to $380.2 million over the third quarter of 2009.  Defendants attributed that healthy increase to "growth in DVD revenue, which increased 54.2% to $305.5 million. . . ."  The Company's net

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

income from continuing and discontinued operations, was $19.5 million, or diluted earnings per share of $0.60.

32.     Regarding the purported performance of the Company at that time, in the October 28, 2010 release, defendant Davis boasted of "the strength of our leading Coin and DVD businesses, and our ability to execute, drive operational efficiencies and deliver what our consumers want."   Defendant Di Valerio stated that the Company's "solid financial and operating performance enables us to invest for the future and focus on returns for our shareholders."   Di Valerio concluded that management was "excited about the opportunities ahead across our businesses."

33.     In addition, in the October 28 release, defendants provided guidance for the Company's fourth quarter 2010 and 2011 financial results.   For the fourth quarter of 2010, Defendants forecast consolidated revenue between $415 million and $440 million and GAAP EPS from continuing operations between $0.79 and $0.85 on a fully diluted basis.   For 2011, defendants guided investors to expect consolidated revenue between $1.80 billion and $1.95 billion and GAAP EPS from continuing operations between $3.00 and $3.50 on a fully diluted basis.

34.     On October 28, 2010, the Associated Press, repeating the Company's financial results, reported that analyst Michael Pachter ("Pachter") of Wedbush Securities opined that Coinstar and Netflix would "continue to profit from physical rentals of DVDs because they offer consumers better value than video-on-demand or rentals available through cable or satellite services."   Pachter rated Coinstar "outperform."   Pachter continued that "[i]t's [Coinstar] and Netflix; they're going to divide the world.   Because Coinstar offers lower rental costs than VOD at slightly less convenience, there's a lot of room for these guys to grow."

35.     On October 28, 2010, the Associated Press, repeating the Company's financial results, reported that analyst Michael Pachter ("Pachter") of Wedbush Securities opined that Coinstar and Netflix would "continue to profit from physical rentals of DVDs because they offer

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

consumers better value than video-on-demand or rentals available through cable or satellite services." Pachter rated Coinstar "outperform." Pachter continued that "[i]t's [Coinstar] and Netflix; they're going to divide the world. Because Coinstar offers lower rental costs than VOD at slightly less convenience, there's a lot of room for these guys to grow."

36.     In addition, on October 28, 2010, defendants caused Coinstar to file with the SEC the Company's Quarterly Report on Form 10-Q for the period ended September 30, 2010 ("10-Q"). Defendant Di Valerio signed the 10-Q and both he and defendant Davis certified the financial results contained therein. In addition to repeating the summary of the Company's financial results in the October 28 press release in greater detail, defendants also made substantially similar statements concerning the Company operations, as had been published previously. The 10-Q also provided statements concerning the Company's Basis of Presentation and Principles of Financial Consolidation, in part, as follows:

> NOTE 1: BASIS OF PRESENTATION AND PRINCIPLES OF
>
> CONSOLIDATION The consolidated financial information included herein has been prepared by Coinstar, Inc. without audit, pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC"). The unaudited consolidated financial statements of Coinstar included herein reflect all adjustments, consisting only of normal recurring adjustments that, in the opinion of management, are necessary to present fairly our consolidated financial position, results of operations and cash flows for the periods presented. The financial information as of December 31, 2009 is derived from our 2009 Annual Report on Form 10-K, however, certain amounts in the prior period financial statements have been reclassified to conform to our current period presentation. The consolidated financial statements should be read in conjunction with the consolidated financial statements and the notes thereto included in our 2009 Annual Report on Form 10-K. The results of operations for the interim periods presented are not necessarily indicative of the results to be expected for the full year.

37.     **Controls**. The Company's 10-Q also contained representations which attested to the purported effectiveness and sufficiency of its controls and procedures, as follows:

> Item 4. Controls and Procedures
>
> Evaluation of Disclosure Controls and Procedures

We maintain a set of disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")).  Management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of the design and operation of our disclosure controls and procedures as of the end of the period covered by this report and has determined that such disclosure controls and procedures are effective.

Changes in Internal Control over Financial Reporting

We also maintain a system of internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act). No changes in our internal control over financial reporting occurred during the quarter ended September 30, 2010 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

38.    **Certifications**. In addition to the foregoing, the Company's 10-Q also contained certifications by defendants Davis and Di Valerio that attested to the purported accuracy and completeness of the Company's financial and operational reports, as follows:

**CERTIFICATION PURSUANT TO SECTION 302(a) OF
THE SARBANES-OXLEY ACT OF 2002**

1.    I have reviewed this Form 10-Q of Coinstar, Inc.

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)    designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-11

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

b)   designed such internal controls over financial reporting, or caused such internal controls over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)   evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by this report based on such evaluation; and

d)   disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)   all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)   any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: October 28, 2010

/s/ PAUL D. DAVIS Paul D. Davis Chief Executive Officer

* * *

Date: October 28, 2010

/s/ J. SCOTT DI VALERIO
J. Scott Di Valerio
Chief Financial Officer

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-12

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

**CERTIFICATION OF CHIEF EXECUTIVE OFFICER
PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO SECTION 906
OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of Coinstar, Inc. (the "Company") on Form 10-Q for the period ended September 30, 2010 as filed with the Securities and Exchange Commission on the date hereof (the "Form 10-Q"), I, Paul D. Davis, Chief Executive Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to § 906 of the Sarbanes-Oxley Act of 2002, that:

(1)    The Form 10-Q fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (15 U.S.C. 78m or 78o(d)); and

(2)    The information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated: October 28, 2010

/s/ PAUL D. DAVIS
Paul D. Davis
Chief Executive Officer

**CERTIFICATION OF CHIEF FINANCIAL OFFICER
PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED PURSUANT TO SECTION 906
OF THE SARBANES-OXLEY ACT OF 2002**

In connection with the Quarterly Report of Coinstar, Inc. (the "Company") on Form 10-Q for the period ended September 30, 2010 as filed with the Securities and Exchange Commission on the date hereof (the "Form 10-Q"), I, J. Scott Di Valerio, Chief Financial Officer of the Company, certify, pursuant to 18 U.S.C. § 1350, as adopted pursuant to §906 of the Sarbanes-Oxley Act of 2002, that:

(1)    The Form 10-Q fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended (15 U.S.C. 78m or 78o(d)); and

(2)    The information contained in the Form 10-Q fairly presents, in all material respects, the financial condition and results of operations of the Company.

Dated: October 28, 2010

/s/ J. SCOTT DI VALERIO
J. Scott Di Valerio
Chief Financial Officer

    39.    On October 29, 2010, directly after the publication of defendants' October 28 press release, the filing of the Company's 10-Q, and the positive media reports that followed, the

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

per share price of Coinstar's common stock increased substantially. That day, shares of the Company's common stock traded up to almost $58.50 per share, before closing the trading day at $57.58 per share – nearly a 25% increase over the prior day's closing price of $46.26 per share, on extremely heavy volume of over 11.273 million shares traded.

40. The statements contained in Coinstar's October 28, 2010, release and those statements contained in the 10-Q, referenced above, were each materially false and misleading when made, and were known by defendants to be false or were deliberately disregarded as such thereby, for the following reasons, among others, at that time and throughout the Class Period:

(a) it was not true that the Company was continuing to operate according to plan and, from the inception of the Class Period, Coinstar was already evidencing a decline in sales as customers purchased fewer DVDs per purchase, and as poor inventory management and controls resulted in the Company's removing material amounts of old inventory early in the fourth quarter, such that Coinstar was immediately seeing a material adverse impact on revenues and gross margins;

(b) Coinstar was not performing according to plan as lower sales of more expensive "Blu-ray" DVDs and poor title selection were immediately resulting in lower sales to customers;

(c) the Company was being adversely impacted by the 28-day delay that the movie studios had imposed on Coinstar, such that the Company was operating below expectations and such that Coinstar was not, and would not be, able to achieve guidance sponsored and/or endorsed by defendants;

(d) it was not true that Coinstar maintained adequate systems of internal operational or financial controls, such that Coinstar's public statements and reported guidance was either true, accurate, or reliable;

(e) the Company was also being adversely impacted by other long-term problems, such as its inability to compete with on-line video streaming providers, such as Netflix

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-14-

1    (which could deliver movies directly to consumers over the internet to their home televisions and

2    computers), which despite its statements to the contrary, Coinstar had little or no ability to

3    rectify; and

4    (f)    As a result of the aforementioned adverse conditions which defendants

5    failed to disclose, throughout the Class Period, defendants lacked any reasonable basis to claim

6    that Coinstar was operating according to plan, or that Coinstar could achieve defendants'

7    guidance on the Company's financial results for the fourth quarter of 2010 or 2011.

8    41.    As a direct result of defendants' dissemination of the October 28 press release and

9    the 10-Q, on November 10, 2010, Forbes.com issued an positive report about Coinstar, noting

10    that its earnings announcement was the Company's seventh straight "earnings surprise"

11    surpassing EPS.  Attributing its success to the Redbox DVD kiosks, Forbes.com stated that "at

12    19 times the 2011 estimates and with a PEG of 1.4 [Coinstar's common stock] is not overpriced

13    either. In fact, these valuations are lower than the historic averages for CSTR. Also, as long as

14    the growth story keeps improving, investors have no trouble buying up shares."  The Forbes.com

15    article concluded that "CSTR is taking a breather right now, but as investors get used to the

16    higher price, it should continue higher."

17    42.    The publication of defendants' materially false and misleading statements had

18    their intended effect and, throughout the Class Period, shares of the Company continued to trade

19    at artificially inflated levels never closing below $56.33 per share.  In fact, rather than disclose

20    the true financial and operational condition of the Company at that time, throughout the Class

21    Period, defendants took advantage of the artificial inflation in the price of Company shares and

22    liquidated significant amounts of their privately held Coinstar common stock in the open market.

23    Certain sales support that defendants knew or were reckless in not knowing the truth about

24    Coinstar's operating and financial conditions.

25    43.    Donald R. Rench, Coinstar's General Counsel and Secretary, had programmed

26    sales throughout 2009 and 2010 that were relatively small.  For example, on December 12, 2008

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-15

and December 12, 2009, Rench sold 93 shares.  On February 2, 2009 and February 2, 2010, Rench sold 285 shares.  On February 20, 2009 and February 20, 2010, Rench sold 112 shares. Finally, on March 1, 2009 and March 1, 2010, Rench sold 188 shares.

44.    On November 2, 2010, however, Rench exercised 2,800 options at $15.313 and 12,500 options at $23.9, then immediately sold 3,000 shares at $58.70 and 11,792 shares at $59.03, netting proceeds of $530,555.36.  On November 12, 2010, Rench exercised 17,265 options at option prices ranging from $22.60 to $31.39, and immediately sold the 17,265 shares at $60.99, netting proceeds from the November 12, 2010 sale of $573,620.48.

45.    In the three years preceding the Class Period, a review of the Coinstar directors' Forms 4 indicates sales clusters in May and March.  Only in 2010, after the stock price jumped up to the $60.00 range did the directors have unusual sales.  In November 2010, the Company's directors (not including Paul Davis) sold approximately 34,862 shares of the Company's stock. In fact, the November 2010 sales were the first time that directors Ahitov and O'Connor sold any of their Company stock.

46.    More, on December 27, 2010, with only three days left in the fourth quarter, defendants published a release that announced that, on February 3, 2011, defendants would announce results for the fourth quarter and full year 2010.  Three days before the actual conclusion of the fourth quarter of 2010, conspicuously absent from their announcement of when the Company would disclose its financial results for 2010 was any reference to actual performance in the fourth quarter of 2010 or revised guidance for 2011.

## VII.  THE TRUE FINANCIAL AND OPERATIONAL CONDITION OF COINSTAR IS BELATED DISCLOSED

47.    On January 13, 2011, following the close of trading, defendants shocked investors, announcing financial and operational results well below analysts' expectations and previous guidance that they authored and endorsed.  Fourth quarter 2010 revenues, defendants

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-16

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

reported, would fall materially short of the $415 - $440 million they had projected, at $391 million.  Worse still, EPS would fall far short of the $0.79-$0.85 range defendants had guided, disappointing investors at $0.65-$0.69.  The Company stated that it:

> expected stronger performance from the titles scheduled for release during the 2010 fourth quarter holiday season, particularly from the slate of 28-day delay and higher-priced Blu-ray™ titles, despite a 16% lower box office for scheduled releases compared with those in fourth quarter 2009.  In addition, in anticipation of demand for new releases that did not materialize, redbox removed older inventory early, impacting revenue and gross margin.  Further, redbox consumers utilized "rent and return anywhere" to a higher level than expected, which caused temporary imbalances in available titles across the kiosk network.

48.    For the full year, 2011, defendants again disappointed investors revising the October 28, 2010 guidance materially downward.  Defendants disclosed that as of January 13, 2011, for 2011, they "expect[ed] revenue between $1.70 billion and $1.85 billion, adjusted EBITDA from continuing operations between $325 million and $355 million, and GAAP EPS from continuing operations between $2.60 and $3.10, based on a share count of 33.3 million."

49.    About these results, defendant Davis attributed the decline to several factors including that defendants failed to understand the impact the first holiday season with 28-day delayed titles would have on results for the quarter.  Davis continued that defendants failed to perceive that Blu-ray demand was not robust and that they purchased Blu-ray disks to handle a far higher demand than materialized.  In addition, Davis blamed his team's inability to perceive that customers were renting fewer movies per trip to the DVD kiosks.

50.    Following the publication of defendants' corrective disclosure on January 13, 2011, shares of the Company were immediately halted from trading.  When shares of the Company resumed trading the following day, on January 14, 2011, Coinstar stock declined materially, falling to about $41.50 per share, down almost $15.50 per share, or over 27%, from the prior day's close of $56.95 per share.

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-17

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

51.     Following the collapse in the price of Company shares, on January 14, 2011, TheStreet.com also published a reported that included analysts' reactions to the Company's announcement and the resulting precipitous decline in the price of its common stock.  According to TheStreet.com, Needham analyst Charles Wolf ("Wolf") stated that "[g]iven the apparent temporary nature of the factors causing the fourth-quarter shortfall, we were surprised that the company also lowered 2011 guidance."

52.     The market for Coinstar's common stock was at all relevant times open, well-developed, and efficient. As a result of these materially false and misleading statements and failures to disclose, Coinstar common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Coinstar common stock based upon the integrity of the market price of Coinstar common stock and market information relating to Coinstar, and have been damaged thereby.

53.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Coinstar common stock by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company and its business and operations, as alleged herein.

54.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Coinstar's business, prospects, and operations.  These material misstatements and omissions had the effect of creating in the market an unrealistically positive assessment of Coinstar and its business, prospects, and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

1    misleading statements during the Class Period resulted in plaintiff and other members of the

2    Class purchasing the Company's common stock at artificially inflated prices, thus causing the

3    damages complained of herein.

VIII.   CAUSATION AND ECONOMIC LOSS

5        55.    During the Class Period, as detailed herein, defendants engaged in a scheme to

6    deceive the market, and a course of conduct that artificially inflated the price of Coinstar's

7    common stock and operated as a fraud or deceit on Class Period purchasers of Coinstar's

8    common stock by misrepresenting the Company's operating condition and financial prospects.

9    Ultimately, however, when defendants' prior misrepresentations and fraudulent conduct came to

10   be revealed and was apparent to investors, Coinstar's common stock declined precipitously –

11   evidence that the prior artificial inflation in Coinstar's security prices was eradicated.  As a result

12   of their purchases of Coinstar common stock during the Class Period, plaintiff and other

13   members of the Class suffered economic losses, i.e., damages under the federal securities laws.

14       56.    By improperly characterizing the Company's financial results and

15   misrepresenting its prospects, the defendants presented a misleading image of Coinstar's

16   business and future growth prospects.  During the Class Period, defendants repeatedly

17   emphasized the ability of the Company to monitor and control its operations and expenses, and

18   consistently reported results within the range of guidance sponsored or endorsed by the

19   Company.  These claims caused and maintained the artificial inflation in Coinstar's common

20   stock prices throughout the Class Period and until the truth about the Company was ultimately

21   revealed to investors.

22       57.    Moreover, the decline in Coinstar's stock price at the end of the Class Period was

23   a direct result of the nature and extent of defendants' fraud being revealed to investors and to the

24   market.  The timing and magnitude of Coinstar's stock price decline negates any inference that

25   the losses suffered by plaintiff and the other members of the Class was caused by changed

26   market conditions, macroeconomic or industry factors, or even Company-specific facts unrelated

1    to defendants' fraudulent conduct. During the same period in which Coinstar's share price fell

2    over 43% as a result of defendants' fraud being revealed, the Standard & Poor's 500 securities

3    index was relatively unchanged.

4        58.    The economic loss, *i.e.*, damages suffered by plaintiff and other members of the

5    Class, was a direct result of defendants' fraudulent scheme to artificially inflate the price of

6    Coinstar's common stock and the subsequent significant decline in the value of the Company's

7    common stock when defendants' prior misstatements and other fraudulent conduct was revealed.

8                    **IX.   ADDITIONAL SCIENTER ALLEGATIONS**

9        59.    As alleged herein, defendants acted with scienter in that each defendant knew that

10   the public documents and statements issued or disseminated in the name of the Company were

11   materially false and misleading; knew that such statements or documents would be issued or

12   disseminated to the investing public; and knowingly and substantially participated or acquiesced

13   in the issuance or dissemination of such statements or documents as primary violations of the

14   federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their

15   receipt of information reflecting the true facts regarding Coinstar, their control over, and/or

16   receipt and/or modification of Coinstar's allegedly materially misleading misstatements and/or

17   their associations with the Company which made them privy to confidential proprietary

18   information concerning Coinstar, participated in the fraudulent scheme alleged herein.

19       60.    Defendants were motivated to materially misrepresent to the SEC and investors

20   the true financial condition of the Company because their scheme and illegal course of conduct:

21   (i) deceived the investing public regarding Coinstar's business, operations, and management and

22   the intrinsic value of Coinstar common stock; (ii) enabled defendants to artificially inflate the

23   price of Coinstar common stock; (iii) enabled Coinstar insiders to sell millions of dollars of their

24   privately held Coinstar shares while in possession of material adverse non-public information

25   about the Company; and (iv) caused plaintiff and other members of the Class to purchase

26   Coinstar common stock at artificially inflated prices.

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-20-

1
2

## X.   APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

3   61.   At all relevant times, the market for Coinstar's common stock was an efficient
4   market for the following reasons, among others:

5   (a)   Coinstar's stock met the requirements for listing on, and was listed and
6   actively traded on, the Nasdaq national market exchange, a highly efficient and automated
7   market;

8   (b)   As a regulated issuer, Coinstar filed periodic public reports with the SEC
9   and the Nasdaq:

10   (c)   Coinstar regularly communicated with public investors *via* established
11   market communication mechanisms, including through regular disseminations of press releases
12   on the national circuits of major newswire services and through other wide-ranging public
13   disclosures, such as communications with the financial press and other similar reporting services;
14   and

15   (d)   Coinstar was followed by several securities analysts employed by major
16   brokerage firm(s) who wrote reports which were distributed to the sales force and certain
17   customers of their respective brokerage firm(s).  Each of these reports was publicly available and
18   entered the public marketplace.

19   62.   As a result of the foregoing, the market for Coinstar common stock promptly
20   digested current information regarding Coinstar from all publicly available sources and reflected
21   such information in Coinstar common stock prices. Under these circumstances, all purchasers of
22   Coinstar common stock during the Class Period suffered similar injury through their purchase of
23   each of Coinstar common stock at artificially inflated prices and a presumption of reliance
24   applies.

25
26

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-21

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

## XI.  NO SAFE HARBOR

63.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Coinstar who knew that those statements were false when made.

## XII.  BASIS OF ALLEGATIONS

64.     Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of SEC filings by Coinstar, as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>COUNT I</u>

**VIOLATION OF SECTION 10(B) OF
THE EXCHANGE ACT AND RULE 10B-5
PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS**

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-22

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

66.     During the Class Period, defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public regarding Coinstar's business, operations, and management and the intrinsic value of Coinstar common stock; (ii) enable defendants to artificially inflate the price of Coinstar common stock; (iii) enable Coinstar insiders to sell millions of dollars of their privately held Coinstar shares while in possession of material adverse non-public information about the Company; and (iv) cause plaintiff and other members of the Class to purchase Coinstar common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, jointly and individually (and each of them) took the actions set forth herein.

67.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Coinstar's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

68.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Coinstar as specified herein.

69.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Coinstar's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Coinstar and its business operations

and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Coinstar common stock during the Class Period.

70.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

71.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts.  Such defendants' material misrepresentations and/or omissions were done knowingly or deliberately for the purpose and effect of concealing Coinstar's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations, and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were deliberate in failing to obtain such knowledge by

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-24-

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

1    deliberately refraining from taking those steps necessary to discover whether those statements

2    were false or misleading.

3        72.    As a result of the dissemination of the materially false and misleading information

4    and failure to disclose material facts, as set forth above, the market price of Coinstar common

5    stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices

6    of Coinstar's common stock was artificially inflated, and relying directly or indirectly on the

7    false and misleading statements made by defendants, or upon the integrity of the market in which

8    the shares trade, and/or on the absence of material adverse information that was known to or

9    deliberately disregarded by defendants but not disclosed in public statements by defendants

10   during the Class Period, plaintiff and the other members of the Class acquired Coinstar common

11   stock during the Class Period at artificially high prices and were damaged thereby.

12       73.    At the time of said misrepresentations and omissions, plaintiff and other members

13   of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the

14   other members of the Class and the marketplace known the truth regarding the problems that

15   Coinstar was experiencing, which were not disclosed by defendants, plaintiff and other members

16   of the Class would not have purchased or otherwise acquired their Coinstar common stock, or, if

17   they had acquired such common stock during the Class Period, they would not have done so at

18   the artificially inflated prices which they paid.

19       74.    By virtue of the foregoing, defendants have violated Section 10(b) of the

20   Exchange Act, and Rule 10b-5 promulgated thereunder.

21       75.    As a direct and proximate result of defendants' wrongful conduct, plaintiff and

22   the other members of the Class suffered damages in connection with their respective purchases

23   and sales of the Company's common stock during the Class Period.

24

25

26

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-25

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660

## COUNT II

### VIOLATION OF SECTION 20(A) OF
### THE EXCHANGE ACT AGAINST INDIVIDUAL DEFENDANTS

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Coinstar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

79.     As set forth above, Coinstar and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.  Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff, and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.  Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.  Awarding extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 and any appropriate state law remedies to assure that the Class has an effective remedy; and

E.  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  February 3, 2011

**BRESKIN JOHNSON TOWNSEND PLLC**

By: ___s/ Roger M. Townsend
Roger M. Townsend
1111 Third Avenue, Suite 2230
Seattle, WA  98101
Telephone: (206) 652-8660
Facsimile: (206) 652-8290

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-27

Antonio Vozzolo
**FARUQI & FARUQI, LLP**
369 Lexington Ave., Tenth Floor
New York, NY  10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Jacob A. Goldberg
**FARUQI & FARUQI, LLP**
101 Greenwood Avenue, Suite 600
Jenkintown, PA  19012
Telephone: (215) 277-5770
Facsimile: (215) 277-5770

Maya S. Saxena
**SAXENA WHITE P.A.**
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Attorneys for the Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATION OF
FEDERAL SECURITIES LAWS WITH JURY DEMAND
-28

BRESKIN | JOHNSON | TOWNSEND PLLC
1111 Third Avenue, Suite 2230
Seattle, Washington 98101  Tel: 206-652-8660